FILED
2000 FEB -3 AM 9:02
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY

JERRY KAPLAN, ESQ./SBN 49142
DAVID SCOTT KADIN, ESQ./SBN 90586
KAPLAN, KENEGOS & KADIN
9150 Wilshire Boulevard, Suite 175
Beverly Hills, CA 90212

Telephone: (310)859-7700
Facsimile: (310)859-7773

RECEIVED AND RETURNED
CLERK, U.S. DISTRICT COURT
FEB -1 2000
CENTRAL DISTRICT OF CALIFORNIA
BY DEPUTY

Attorneys for Plaintiff
HERSEL MIKAELIAN

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

HERSEL MIKAELIAN, an individual,

Plaintiff,

vs.

DAVID MURRAY, an individual, VAL YAVERBAUM, an individual, HD BROUS & CO., INC. a corporation,

Defendants.

EDCV 00-514VAP(JWJx)

CASE NO. ~~00-01231~~ RSWL JWJx

COMPLAINT FOR:

(1) DAMAGES FOR VIOLATION OF STATUTE (15 U.S.C.A. Section 78j(b));
(2) DAMAGES FOR BREACH OF ORAL CONTRACT;
(3) DAMAGES FOR BREACH OF FIDUCIARY DUTY;
(4) DAMAGES FOR FRAUD AND DECEIT;
(5) CONVERSION/MISAPPROPRIATION OF MONEY
(6) DAMAGES FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;
(7) DAMAGES FOR NEGLIGENCE; AND
(8) DAMAGES FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

**JURY TRIAL DEMANDED**

ENTERED ON ICMS
FEB - 7 2000
CV

Plaintiff HERSEL MIKAELIAN alleges in this Complaint as

02/03/00
LA 4-1 DBAYSA 9:02:40 AM
Receipt # 049050
======NO REFUND WITHOUT RECEIPT======
CASE # 00-1231

| | | |
|---|---|---|
| 086900 | Filing Fee Civil | 60.00 |
| 510000 | Special Fund F/F | 90.00 |

===== T O T A L ======= 150.00

CHECK TENDERED $ $150.00

CHECK 4629
======NO REFUND WITHOUT RECEIPT======

follows:

GENERAL ALLEGATIONS COMMON TO ALL COUNTS

1. JURISDICTION. This Court has jurisdiction pursuant to the provisions of 28 U.S.C.A. Section 1331, 15 U.S.C.A. Sections 77p, 78aa, and 78bb(f), as well as pursuant to the provisions of 18 U.S.C.A. Section 1964(c), and has jurisdiction of the state claims alleged herein pursuant to the provisions of 28 U.S.C.A. Section 1367(a). All of the claims herein arise out of the same transaction.

2. Plaintiff is informed and believes, and on those grounds alleges that Defendant HD BROUS ("BROUS"), is, and at all times herein mentioned was, a corporation organized and existing under the laws of the State of New York, with its principal place of business in the State of New York. Plaintiff is informed and believes, and on those grounds alleges, that Defendant HD BROUSE, is, and at all times mentioned was, transacting business in the State of California, including, without limitation, the solicitation of business from Plaintiff while Plaintiff was situated in the state of California. Defendant HD BROUSE, is, and at all times mentioned was, transacting business as a stock brokerage company.

3. Plaintiff is informed and believes, and on those grounds alleges, that Defendants DAVID MURRAY ("MURRAY") and VAL YAVERBAUM ("YAVERBAUM"), are, and at all times mentioned were, residents of the State of New York, licensed as stockbrokers under the laws of the State of New York, and are, and all times mentioned were,

doing business as stockbrokers and soliciting customers and clients residing in the State of California, including, without limitation, soliciting and conducting stock transactions for California residents, including Plaintiff, within the State of California.

4. Plaintiff is, and at all times herein mentioned was, a resident of the State of California. Plaintiff is informed and believes, and on those grounds alleges, that Defendants HD BROUS, MURRAY and YAVERBAUM are, and at all times mentioned were, doing business in the State of California.

5. Plaintiff is informed and believes, and on those grounds alleges, that each Defendants is, and at all times mentioned was, the agent, employee, and/or representative of each other, and in doing the things alleged in this Complaint, was acting within the course and scope of such capacity(ies).

6. Plaintiff is informed and believes, and on those grounds alleges, that Defendants conspired to do each of the tortious acts alleged in this Complaint, and that these acts were undertaken pursuant to, and in furtherance of, the conspiracy.

7. Plaintiff is informed and believes, and on those grounds alleges, that at all relevant times mentioned in this Complaint, Defendants MURRAY and YAVERBAUM were, officers, managing agents, and/or other authorized representatives of HD BROUS, and that the acts of MURRAY and YAVERBAUM were also committed by, authorized by, and/or ratified, by officers, directors, and/or managing agents of HD BROUS.

///

///

**FIRST CLAIM FOR RELIEF AGAINST ALL DEFENDANTS**

**[For Damages for Violation of 15 U.S.C.A. Section 78j(b)]**

8. In or about November 1998, Plaintiff was introduced to Defendant MURRAY, who represented himself as stockbroker employed by Defendant H.D. BROUS. Plaintiff told MURRAY in a telephone conversation that Plaintiff wished to purchase shares of a company known as MUSE TECHNOLOGY ("MUSE") in connection with an Initial Public Offering. MURRAY told Plaintiff that MURRAY and his company HD BROUSE would be willing to act as Plaintiff's broker in connection with purchasing MUSE. MURRAY sent Plaintiff an HD BROUSE "Private Client New Account Form" to open his account, and also gave Plaintiff instructions as to information to be put in the form, including Plaintiff's address.

9. In or about November 1998, and in reliance upon MURRAY's representations that he would act as Plaintiff's broker in purchasing Muse, Plaintiff returned the above-mentioned form to MURRAY, which stated that the initial transaction would be to buy MUSE, and that Plaintiff would be the only one authorized to trade on his account. Plaintiff also sent additional documentation to MURRAY in connection with opening the account, and wired the sum of $80,000.00 to HD BROUSE to purchase the MUSE stock.

10. Defendant HD BROUSE received the $80,000.00. and MURRAY orally promised and represented to Plaintiff that MURRAY would purchase the Muse shares for Plaintiff with the $80,000.00.

11. Plaintiff subsequently discovered that Defendants did not use the $80,000.00 to purchase Muse, but instead, used a portion of

those funds to purchase shares of another company called "Wavo". This was done without Plaintiff's knowledge or consent.

12. Plaintiff advised MURRAY that Plaintiff never authorized this purchase. Defendant MURRAY represented to Plaintiff that the stock had increased in value, and that Plaintiff made a profit, and that the balance of the funds not used to purchase Wavo were still in Plaintiff's account.

13. Plaintiff subsequently discovered that Defendants' representations about making a profit on Wavo, as well as the fact that the balance of the $80,000.00 was still in his account, were false. The true facts were that the Wavo stock had decreased in value, and that there was $10,000.00 missing from Plaintiff's account.

14. When these facts were brought to Defendant MURRAY's attention, MURRAY apologized, and represented to and promised Plaintiff that he would make up for the loss, and would purchase other stocks for him in other companies, including one known as "Genesis".

15. Shortly prior to February 2, 1999, Plaintiff advised MURRAY that Plaintiff was going to Europe, and inquired of MURRAY as to whether Plaintiff needed to do anything with respect to the purchase of the Genesis IPO shares. MURRAY represented and orally promised Plaintiff that he would purchase on Plaintiff's behalf 10,000 shares of Genesis, at a share cost of approximately $15.00. When Plaintiff advised MURRAY that he did not have sufficient funds to effect such a purchase, MURRAY advised Plaintiff to obtain a home equity loan of $150,000.00.

16. Plaintiff relied on Defendant MURRAY's representations, obtained a home equity line, and remitted $150,000.00 to Defendant MURRAY to purchase Genesis.

17. Plaintiff was in Europe from about February 2, 1999 through March 3, 1999, visiting his ill father. When he returned, he was advised by MURRAY's secretary Lee that there were no shares of Genesis in his account, that there were other stocks in his "position" (which Plaintiff never authorized) and that Plaintiff's account had now been reduced by $86,000.00 from the $230,000.00 originally invested by Plaintiff.

18. Plaintiff complained to MURRAY about this, and MURRAY orally promised to reimburse Plaintiff for his full investment.

19. Defendants have failed to reimburse Plaintiff for his full investment, and after giving credit for monies received from the sale of the stocks in his account, there is due and owing the sum of $70,000.00.

20. At all times mentioned, Plaintiff placed trust and confidence in Defendants, who voluntarily accepted such trust and confidence.

21. Plaintiff is informed and believes, and on those grounds alleges, that Defendants were engaged in an ongoing practice of transferring sums of money and assets between clients' accounts without the knowledge, permission of consent of their clients, and that Defendants improperly failed to maintain clients' investment accounts, including those of Plaintiff, separate and distinct from each other, and improperly commingled such accounts.

22. In doing the acts alleged, Defendants directly and indirectly used a means or instrumentality of interstate commerce and the mails, and used and employed, in connection with the purchase and sale of securities registered on a national securities exchange, manipulative and deceptive devices and contrivances in contravention of the rules and regulations of the Securities and Exchange Commission. Defendants violated the provisions of 15 U.S.C.A. Section 78j(b), which statute was enacted to protect investors such as Plaintiff against the type of harm caused by Defendants' violations.

22. As a direct and proximate result of the violations of said statute by Defendants, Plaintiff lost sums of money invested, as well as profits and income, all to his damage in an amount according to proof, but at least $70,000.00, together with interest at the legal rate on the $230,000.00 which Plaintiff tendered to Defendants.

**SECOND CLAIM FOR RELIEF AGAINST ALL DEFENDANTS**

**FOR BREACH OF ORAL CONTRACT**

23. Plaintiff incorporates by this reference Paragraphs 8 through 21 of this Complaint.

24. In or about November, 1998, Plaintiff and Defendants HD BROUSE, YAVERBAUM and MURRAY entered into an oral agreement, under the terms of which Plaintiff agreed to invest sums of money and pay Defendants their standard rates of commissions, and Defendant agreed to effect stock transactions as requested by Plaintiff, to

give Plaintiff financial advice in a reasonable and good faith manner, and to maintain Plaintiff's investment as trustee for the benefit of plaintiff.

25. Pursuant to this oral agreement, Plaintiffs took the actions set forth above, and remitted monies to Defendants to invest.

26. Plaintiff performed all conditions, covenants and promises on his part to be performed, and the contract was, as to Plaintiff, fully executed.

27. Within the past two years, Defendants breached the oral agreement by committing the above-mentioned acts, including, without limitation, effecting stock purchases utilizing Plaintiff's funds without his knowledge or consent and in direct contravention of his instructions, misappropriating Plaintiff's funds for their own use and benefit without Plaintiff's consent, commingling Plaintiff's investments with those of other investors and with Defendants themselves, failing to disclose to Plaintiff material facts regarding how his investment monies had been utilized, and by failing and refusing to render to Plaintiff an accounting of his investments.

28. As a reasonably foreseeable result of the breaches, Plaintiff has been damaged in an amount according to proof, but at least $70,000.00, together with interest at the legal rate on the $230,000.00 which Plaintiff tendered to Defendants.

///

///

///

**THIRD CLAIM FOR RELIEF AGAINST ALL DEFENDANTS**

**FOR BREACH OF FIDUCIARY DUTY**

29. Plaintiff incorporates by this reference Paragraphs 8 through 21 and 24 through 27 of this Complaint.

30. At all times mentioned, Plaintiff placed trust and confidence in Defendants, and Defendants voluntarily accepted such trust and confidence. By reason of their relationship, Defendants owed a fiduciary duty to Plaintiff.

31. Defendants breached their fiduciary duty to Plaintiff by committing the above-mentioned acts as well as the following acts: misappropriating sums of money advanced by Plaintiff for the purchase of shares of stock, failing to comply with Plaintiff's direction for purchase of shares with his funds, purporting to make stock purchases and sales on behalf of Plaintiff without his consent, and by negligently utilizing plaintiff's funds for investment into unreasonable investments in light of Plaintiff's financial condition and status, and by refusing and failing to account to Plaintiff for his investments.

32. Plaintiff is informed and believes, and on those grounds alleges, that Defendants intended to utilize Plaintiff's funds for their own personal benefit.

33. As a proximate result of Defendants' breaches of fiduciary duty, Plaintiff has lost sums of money, income and profits, all to his damage in an amount according to proof, but at least $70,000.00, together with interest at the legal rate on the $230,000.00 which Plaintiff tendered to Defendants.

34. Defendants committed the above mentioned acts intentionally, maliciously, and fraudulently, and with a conscious disregard as to Plaintiff. Plaintiff is informed and believes, and on those grounds alleges, that officers, directors and/or managing agents of the corporate Defendants participated in, committed, authorized and/or ratified the wrongful acts. Plaintiff is entitled to exemplary and punitive damages according to proof.

**FOURTH CLAIM FOR RELIEF**

**AGAINST ALL DEFENDANTS FOR FRAUD**

35. Plaintiff incorporates by this reference Paragraphs Paragraphs 8 through 21, 24 through 27, and 30 - 31 of this Complaint.

36. Because Defendants were licensed brokers, and appeared to be reputable, Plaintiff justifiably relied on Defendants' representations, and invested his monies with them.

37. The above representations made by Defendants were false, and were made to induce Plaintiff to invest monies with them.

38. Had Plaintiff known the true facts, he would not have invested his monies with Defendants.

39. As a proximate result of Defendants' fraud, Plaintiff has been damages in an amount according to proof, but at least $70,000.00, together with interest at the legal rate on the $230,000.00 which Plaintiff tendered to Defendants.

40. As a further proximate result of Defendants' fraud, Plaintiff incurred obligations and expenses associated with the

securing of a home equity line of credit on his real property, including interest charges, all to his further damage in a sum according to proof.

41. Defendants committed the above mentioned acts intentionally, maliciously, and fraudulently, and with a conscious disregard as to Plaintiff. Plaintiff is informed and believes, and on those grounds alleges, that officers, directors and/or managing agents of the corporate Defendants participated in, committed, authorized and/or ratified the wrongful acts. Plaintiff is entitled to exemplary and punitive damages according to proof.

**FIFTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS**

**FOR CONVERSION**

42. Plaintiff incorporates by this reference Paragraphs 8 through 21, 24 through 27, and 30 - 31 of this Complaint.

43. At all times mentioned in this Complaint, Plaintiff was the owner of, and entitled to possession of, the sum of $70,000.00 which he paid to Defendants for the purpose of acquiring shares of stock, as well as interest on the $230,000.00 which Plaintiff tendered to Defendants. Plaintiff has demanded the return of these funds, but Defendants have failed and refused, and continue to fail and refuse, to return the money to Plaintiff.

44. As a proximate result of Defendants' conversion of Plaintiff's money, Plaintiff has been damaged in the sum of $70,000.00, together with interest at the legal rate on the $230,000.00 which Plaintiff tendered to Defendants.

45. Defendants committed the above mentioned acts intentionally, maliciously, and fraudulently, and with a conscious disregard as to Plaintiff. Plaintiff is informed and believes, and on those grounds alleges, that officers, directors and/or managing agents of the corporate Defendants participated in, committed, authorized and/or ratified the wrongful acts. Plaintiff is entitled to exemplary and punitive damages according to proof.

**SIXTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS**

**FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

46. Plaintiff incorporates by this reference Paragraphs 8 through 21, 24 through 27, and 30 - 31, 36 - 41, and 43 - 45 of this Complaint.

47. At all times mentioned in this Complaint, Defendants knew that: Plaintiff was suffering from cancer, which made him particularly susceptible to experiencing emotional distress, and that Plaintiff was investing a substantial sum of his monies as well as encumbering his home by the home equity line.

48. Defendants committed the above-mentioned fraudulent acts in conscious and reckless disregard of the likelihood of causing Plaintiff to suffer severe emotional distress.

49. As a proximate result of Defendants' outrageous acts, and commencing around March 1999 when Plaintiff returned from visiting his ill father and discovered what Defendants had done, and continuing through the present date, Plaintiff suffered severe

emotional distress, as well as physical injury emanating from such severe emotional distress.

50. As a further proximate result of Defendants' outrageous acts, Plaintiff was hurt and injured in his health, strength, and activity, sustaining injury to his body and shock and injury to his nervous system and person, all of which injuries have caused and continue to cause Plaintiff great mental, physical and nervous pain and suffering.

51. As a further proximate result of Defendants' outrageous acts, Plaintiff has been, and will, in the future, be required to employ physicians, surgeons, nurses, therapists, and other medical and psychological practitioners, and has, in the future, will be required to incur medical, psychological, and incidental expenses, all to Plaintiff's further damage in a sum according to proof.

52. As a further direct and proximate result of the outrageous acts of defendants, and each of them, and the resultant severe emotional and physical distress, plaintiff has been prevented from attending to his usual occupation and profession, and will, in the future, be prevented from attending to such occupation and profession, all to plaintiff's further damage for loss of earnings and earnings capacity in a sum according to proof.

53. Defendants committed the above mentioned acts intentionally, maliciously, and fraudulently, and with a conscious disregard as to Plaintiff. Plaintiff is informed and believes, and on those grounds alleges, that officers, directors and/or managing agents of the corporate Defendants participated in, committed,

authorized and/or ratified the wrongful acts. Plaintiff is entitled to exemplary and punitive damages according to proof.

**SEVENTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS**

**FOR NEGLIGENCE**

54. Plaintiff incorporates by this reference Paragraphs 8 - 21 of this Complaint.

55. Defendants negligently handled Plaintiff's account, and negligently advised Plaintiff to obtain the equity line of credit on his real property and to invest an additional $150,000.00 to purchase stocks.

56. Defendant HD BROUSE negligently hired, employed, supervised, trained, selected, screened, and managed Defendants MURRAY and YAVERBAUM, so as to proximately cause the damages to Plaintiff as alleged in this Complaint.

57. As a proximate result of Defendants' negligence, Plaintiff has been damaged in an amount according to proof, but at least $70,000.00, together with interest at the legal rate on the $230,000.00 which Plaintiff tendered to Defendants.

**EIGHTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS**

**FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

58. Plaintiff incorporates by this reference Paragraphs 8 - 21 of this Complaint.

59. At all times mentioned, Defendants knew that Plaintiff was suffering from cancer which made Plaintiff particularly susceptible to experiencing emotional distress.

60. Plaintiff is informed and believes, and on those grounds alleges that, that at the time Defendants did each of the acts alleged, they knew, or in the exercise of reasonable care, should have known, that such acts would cause Plaintiff to suffer severe emotional distress.

61. As a proximate result of Defendants' outrageous acts, Plaintiff suffered severe emotional distress, as well as physical injury emanating from such severe emotional distress, all to his damage in an amount according to proof.

62. As a further proximate result of Defendants' outrageous acts, Plaintiff was hurt and injured in his health, strength, and activity, sustaining injury to his body and shock and injury to his nervous system and person, all of which injuries have caused and continue to cause Plaintiff great mental, physical and nervous pain and suffering, in an amount according to proof.

63. As a further proximate result of Defendants' outrageous acts, Plaintiff has been, and will, in the future, be required to employ physicians, surgeons, nurses, therapists, and other medical and psychological practitioners, and has, and in the future, will be required to incur medical, psychological, and incidental expenses, all to Plaintiff's further damage in a sum according to proof.

64. As a further direct and proximate result of Defendants' outrageous acts, Plaintiff will, in the future, be prevented from

attending to such occupation and profession, all to Plaintiff's further damage for loss of earnings and earnings capacity in a sum according to proof.

65. Plaintiff is informed and believes, and on those grounds alleges, that the injuries to Plaintiff will result in some permanent disability to him, and that he has been damaged in an amount according to proof.

WHEREFORE, Plaintiff prays for judgment as follows:

**<u>ON THE FIRST CLAIM FOR RELIEF (Violation of Statute (15 U.S.C.A. Section 78j(b)):</u>**

1. For all damages according to proof.

**<u>ON THE SECOND CLAIM FOR RELIEF</u>**

1. For all damages according to proof.

**<u>ON THE THIRD CLAIM FOR RELIEF</u>**

1. For all damages according to proof; and
2. For exemplary and punitive damages according to proof.

**<u>ON THE FOURTH CLAIM FOR RELIEF</u>**

1. For all damages according to proof; and
2. For exemplary and punitive damages according to proof.

**<u>ON THE FIFTH CLAIM FOR RELIEF</u>**

1. For return of the monies which were converted, or for damages if the monies are not returned; and
2. For exemplary and punitive damages according to proof.

**<u>ON THE SIXTH CLAIM FOR RELIEF</u>**

1. For all damages according to proof; and
2. For exemplary and punitive damages according to proof.

**ON THE SEVENTH CLAIM FOR RELIEF**

1. For all damages according to proof.

**ON THE EIGHTH CLAIM FOR RELIEF**

1. For all damages according to proof.

**ON ALL CLAIMS FOR RELIEF**

1. For interest according to proof;
2. For costs of suit, including attorneys' fees; and
3. For all other proper relief.

DATED: January 31, 2000

KAPLAN, KENEGOS & KADIN

By ______________________
JERRY KAPLAN
DAVID SCOTT KADIN
Attorney for Plaintiff
HERSEL MIKAELIAN

**JURY TRIAL DEMANDED.**

Dated: January 31, 2000

KAPLAN, KENEGOS & KADIN

By ______________________
JERRY KAPLAN
DAVID SCOTT KADIN
Attorney for Plaintiff
HERSEL MIKAELIAN